AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of California

**SEALED**

| | |
|---|---|
| United States of America<br>v.<br>Yahya Z. Yaghmour<br><br>*Defendant(s)* | Case No. 1:25-mj-00083-SKO |

FILED
Aug 04, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT BY RELIABLE ELECTRONIC OR TELEPHONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **April 14, 2021** in the county of **Fresno** in the **Eastern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1343 | Wire Fraud<br><br>Maximum Penalties:<br>20 years imprisonment<br>$250,000 fine<br>3 years supervised release<br>$100 special assessment |

This criminal complaint is based on these facts:

See attached affidavit of SA Michael Larson

☑ Continued on the attached sheet.

*Complainant's signature*

Michael Larson, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

Date: 8/4/2025

*Judge's signature*

City and state: Fresno, California

Hon. Sheila K. Oberto, US Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Michael Larson, being first duly sworn, do hereby depose and state as follows:

### I. AGENT BACKGROUND AND RELEVANT CRIMES

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since 2015. I am assigned to the FBI office in Fresno, California. I am responsible for investigating violations of federal and state law, including violent crimes, computer related crimes and financial crimes to include bank fraud and wire fraud. I have attended trainings and conducted investigations related to these crimes.

2. This Affidavit is made in support of a criminal complaint charging Yahya Z. Yaghmour ("Yaghmour") with a violation of Title 18, United States Code, Section 1343 (wire fraud). The Affidavit serves only to establish probable cause for the arrest of Yaghmour. It does not detail every fact of the investigation into Yaghmour or all information known to me and other law enforcement investigators regarding Yaghmour. The Affidavit is based on my training and experience as well as my personal knowledge, my review of documents, and my communications with other law enforcement investigators and witnesses in this case.

3. Title 18, United States Code, Section 1343 provides, in relevant part: Whoever having devised or intending to devise any scheme to artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

### II. BACKGROUND ON THE PAYCHECK PROTECTION PROGRAM (PPP)

4. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a law passed in March 2020 intended to address the economic fallout of the COVID-19 pandemic in the United States. One source of economic relief provided by the CARES Act was the Paycheck Protection Program (PPP). PPP loans were funded by SBA-approved lenders, such as Harvest Small Business Finance ("Harvest").

5. To obtain a PPP loan, a business had to submit a PPP loan application via SBA Form 2483 or its equivalent, which was signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make certain affirmative certifications regarding its eligibility.

6. The SBA Form 2483 required the authorized representative to certify: (1) That the business was in operation on February 15, 2020, and that it had employees for whom it paid salaries and payroll taxes, or that it had independent contractors; (2) The accuracy of information and documents submitted and describes various criminal penalties for false statements; (3) The average monthly payroll expenses and the number of employees of the business; (4) Whether any owner of the applicant business, or any business owned or controlled by the owner, has ever obtained a loan from the SBA they later defaulted on within the last seven years or that is currently delinquent.

7. These figures were used to calculate the business's eligibility and the amount of money it could receive under the PPP. Additionally, a business applying for a PPP loan had to provide documentation showing their payroll expenses. Generally, a higher monthly payroll figure would suggest to the lending bank that a larger PPP loan was deserved by the applicant. Thus, if an applicant were to falsely inflate their payroll, they could obtain a larger loan amount.

8. A PPP loan application was processed by a participating lending financial institution. If the participating financial institution approved a loan application, it funded the loan using its monies, which were 100% guaranteed by the U.S. Treasury via the SBA. PPP loan proceeds had to be used by the business for payroll costs, interest on mortgages, rent, and utilities.

9. To obtain forgiveness of a PPP loan, a business must submit a PPP Loan Forgiveness Application via SBA Form 3508EZ or its equivalent. The PPP allows the interest and principal on the PPP loan to be forgiven if the business spent the loan proceeds on authorized expenses within a designated period of time (usually within twenty-four weeks of receiving the proceeds) and used at least 60% of the PPP loan proceeds for payroll. Applicants requesting loan forgiveness must typically provide supporting documentation, such as payroll records, receipts for payment of rent, or other evidence the funds were expended on authorized business expenses. The SBA Form 3508EZ contains

warnings about criminal penalties for false statements and the applicant must certify all information provided is correct.

10. The SBA processed PPP loan forgiveness applications received from approved lenders or received directly from PPP recipients via the internet by servers located in Oregon. If SBA approved forgiveness of a loan, the SBA transmitted the forgiveness payments from SBA to the SBA-approved PPP lender via U.S. Treasury computer servers primarily located in Virginia. Thus, any PPP loan forgiveness application that is approved involves interstate wire communications and is covered via payment of U.S. Treasury monies.

### III. STATEMENT OF PROBABLE CAUSE

#### A. INTRODUCTION

11. In 2021, Yahya Z. Yaghmour ("Yaghmour") devised a scheme to defraud the Small Business Administration and SBA lenders of money by means of false and fraudulent pretenses. In April 2021, Yaghmour applied for, and received, two Paycheck Protection Program (PPP) loans by making false and materially misleading representations to the lenders about his income and employment. As a result, he received roughly $41,666 to which he was not entitled. By making additional false representations in September 2021, he caused the loans to be forgiven by the SBA.

#### B. YAGHMOUR'S LOANS WITH HARVEST SMALL BUSINESS FINANCE

12. According to bank records and SBA records, on/about April 14, 2021 Yaghmour submitted a PPP loan application to Harvest Small Business Finance ("Harvest") (loan 4950548807). Yaghmour signed the application[1] digitally and transmitted it via the internet.

13. The application listed the "Borrower" as Yahya Zakaria Yaghmour in Fresno, California 93720, doing business as "BC Outlet" and included the following information:

| Total Amount of Gross Income (from IRS Form 1040, Schedule C, Line 7) | Tax Year (for Gross Income) | Loan Request Amount |
|---|---|---|
| $100,940.00 | 2020 | $20,833.00 |

---

[1] He submitted standard SBA Form 2483-C (03/21) (Paycheck Protection Program Borrower Application Form for Schedule C Filers Using Gross Income).

3

14. Yaghmour stated he was a "self-employed individual" and that the business had one employee (including owners). Under "Applicant Ownership", Yaghmour stated "See Attached Table," and attached a schedule indicating he was 100% owner of the business.

15. In response to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business?"), Yaghmour responded, "no."

16. The application contained Yaghmour's initials, "YZY" beside the following declaration: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

17. Yaghmour also submitted with the application his purported 2020 Internal Revenue Service Schedule C (Form 1040) (Profit and Loss From Business) which stated he had gross income from "furniture" of $100,940.

18. Yaghmour's application included a copy of an "ACH information Request Form" filled out and signed digitally by Yaghmour, which provided his banking information at Fresno First Bank (Account ending -877).

19. On/about April 16, 2021, Harvest approved the loan and transferred $20,833 to Yaghmour's bank via interstate wire.

20. On/about April 17, 2021, Yaghmour digitally signed and submitted a Second Draw PPP loan application[2] to Harvest (assigned loan number 3052779000). On/about May 18, 2021, Harvest approved the loan and transferred an additional $20,833 to Yaghmour's bank via interstate wire.

21. Thus, in total between loan 4950548807 and 3052779000, Yaghmour received a total of $41,666 from Harvest in 2021.

### C. FURTHER INVESTIGATION REVEALED THAT YAGHMOUR'S LOAN APPLICATIONS CONTAINED MATERIAL MISREPRESENTATIONS

22. The Affiant's investigation to date has revealed that Yaghmour made materially false and misleading representations to Harvest to procure his PPP loans.

---

[2] He submitted standard SBA Form 2483-SD-C (3/21) (Paycheck Protection Program Second Draw Borrower Application Form for Schedule C Filers Using Gross Income).

4

23. First, Yaghmour stated in his PPP applications that he had no interest in any other businesses, other than BC Outlet. Yet according to Fresno County Business Records, on February 24, 2021, roughly two months prior to his first PPP application, Yaghmour registered a business, "Valley Auto Toys." Similarly, Yaghmour filed or caused to be filed a Fictitious Business Name Statement dated August 16, 2021 indicating that Valley Auto Toys, Inc. operated as "Car City" and listed Yahya Z. Yaghmour as the "CEO." Yet Yaghmour stated in his PPP application that he had no interest in any other businesses, other than BC Outlet. According to SBA records, Yaghmour's wife submitted two PPP loan applications for Valley Auto Toys and received $20,833 on/about April 15, 2021 and $20,833 on/about May 18, 2021. Additionally, Fresno First Bank records for account ending -877 (the account into which Yaghmour received the proceeds of the Harvest loans), was titled in the name of "Low Price Liquidation Inc[3], DBA Car City, 1305 N Blackstone Ave, Fresno CA 93703." Yet, again, in the PPP loan applications, Yaghmour indicated he had no interest in any businesses other than BC Outlet.

24. Substantial other evidence establishes that Yaghmour was not earning $100,940 as the owner and sole employee of BC Outlet. As indicated previously, Yaghmour submitted with his PPP applications his purported 2020 Internal Revenue Service Schedule C (Form 1040) (Profit and Loss From Business) which stated he had gross income from "furniture" of $100,940. Yet on March 4, 2025, agents received information from the Internal Revenue Service indicating that Yaghmour did not file a Form 1040, Schedule C, Profit or Loss From Business (Sole Proprietorship) for the year of 2020. Thus, the Schedule C that Yaghmour provided to Harvest is not an authentic document. Second, agents received a copy of Fresno Fire Department incident report 2019-9036418, pertaining to a structure fire response to BC Outlet, 4295 N. Blackstone Avenue, Fresno, California, which establishes that on September 17, 2019, BC Outlet received "near complete damage to [the] business." Public source news reporting indicated that the business closed after the fire. Your affiant, to date, has not been able to locate any evidence that BC Outlet operated at any location in 2020, the year Yaghmour stated he earned $100,940 from BC Outlet.

---

[3] In June and July 2020, Yaghmour and his wife applied for Economic Injury Disaster Loans (EIDL). SBA records show that in June 2020, Yaghmour identified himself as the Chief Executive Officer (CEO) of Low Price Liquidation, and that Low Price Liquidation employed two people.

5

25. On/about September 16, 2021, Yaghmour submitted two applications to the SBA requesting forgiveness of each of the two $20,833 PPP loans. In that request, Yaghmour represented and certified under penalty of perjury that he had complied with all the rules and requirements of the PPP. That certification appears to have been materially false and misleading because as summarized above, he had not complied with the PPP rules and regulations. On/about June 22, 2021, the SBA issued forgiveness payments to the lender for the two $20,833 PPP loans.

### III. CONCLUSION

26. Based on the above evidence, there is probable cause to believe Yahya Z. Yaghmour violated Title 18, United States Code, Section 1343, by applying for Paycheck Protection Program (PPP) loans using applications containing numerous materially false and misleading representations about his income and employment.

Respectfully submitted,

*[signature]*

Michael Larson
Special Agent

Approved as to form:

/s/ Jeffrey A. Spivak

Jeffrey A. Spivak
Assistant United States Attorney

Affidavit submitted by email and pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim P. 4(d) and 4.1 before me this 4th day of August 2025:

*[signature]*

The Honorable Sheila K. Oberto
United States Magistrate Judge

6